## TEXAS & PACIFIC R'Y. CO. v. PATRICK McDONNELL.

### IN COURT OF APPEALS, AUSTIN TERM, 1884.

*Railroad Ticket—Limited.*—When a railroad ticket limits the time within which it must be used, it will not entitle its holder to a passage after the expiration of that time; and a passenger holding such ticket, and refusing to pay his fare may be ejected.

*Common Carrier—Liability.*—This right is limited at common law, and the carrier cannot eject him in such a manner as to endanger his safety, nor can the carrier use more force than may be necessary.

*Negligence.*—Although the passenger was notified to get off the train when it reached a station, the failure of the employees to put him off when such station was reached, was negligence.

Appeal from Tarrant county.

Appellee took passage upon appellant's line of railway, having a ticket which he had bought of appellant's agent at Fort Worth, which authorized him to travel from Fort Worth to Cisco and return within ten days from the date of the ticket. He was returning from Cisco to Fort Worth on this ticket, but the ten days time to which the ticket limited his right to travel on the road had expired, but he testified on the trial that he regarded the ticket as still good for the trip as he had been permitted to travel on a similar ticket over said road once before. Appellee got on the train at Cisco, and before the train reached Eastland, the first station East of Cisco, the conductor examined his ticket and informed him that, it was not

good, and that he must pay his fare or get off at Eastland. Appellee told the conductor he could not pay his fare as he had no money. Appellee did not pay his fare nor did he get off at Eastland. After the train had passed Eastland about one mile the conductor stopped the train and put him off. This was about 12 or 1 o'clock at night and the night was very cold and damp. Appellee was suffering at the time from an old gun shot wound and was lame. He had no overcoat with him. Between the place of his ejectment from the train and Eastland there was a trestle on the road. He was put off the train near a section house, but there is no evidence how near the section house was or whether or not any one lived there. He remained at the place of ejectment all night and suffered greatly from cold because of his exposed condition. The conductor, in putting appellee off the train, discovered that he was lame.

Upon the foregoing state of facts the jury returned a verdict awarding appellee damages in the sum of $250; and judgment was returned in accordance with the verdict.

Appellant contends that the verdict is against the evidence, and is excessive, and that the court erred in overruling its motion for a new trial.

1. When a railroad ticket limits the time within which it must be used, it will not entitle its holder to a passage after the expiration of that time. (Hutch. on Carriers sec. 575.) Appellee, therefore having no valid ticket, and failing to pay his fare, was a tresspasser upon appellant's cars, and appellant had the right in a proper manner, to eject him therefrom. But this right of ejectment is by no means an unlimited one. It was at one time limited in this state by statutory enactment which provides as follows: "If any passenger shall refuse to pay his fare or toll, it shall be lawful for the conductor of the train and the servants of the corporation to put him out of the cars at any usual stopping place which the conductor may select." (P. D. Art. 4892.) This provision however, was repealed by the railroad act of 1876, and was not re-enacted in the Revised Statutes, so that we now have no statute on the subject.

We must therefore look alone to the common law governing carriers for the rule applicable to the case under consideration. (R. S. Art. 277.)

At common law a passenger who refuses to obey a reasonable regulation of the carrier, forfeits his rights to be carried, and at once

puts himself in a condition of an intruder and may be ejected at any point upon the carrier's route at which he may choose to put him off. (Hutch. on Carriers § 590.) This rule applies of course to the non-payment of the customary fare. But this general rule there are well established qualifications and exceptions. Thus, though the carrier may not be required to pay regard to the mere convenience to the passenger, when he has forfeited his right to be carried, he cannot eject him in such a manner as to endanger his safety without making himself liable for the consequences. He can use no more force than may be necessary, and if he resorts to unnecessary violence, it will be no defence that the passenger had offended against his rules, and had thereby subjected himself to the carrier's right to eject him, and not only the unnecessary force, but any circumstances of insult or indignity in the manner of his expulsion may be shown in an action by the passenger." (Hutch. on Carriers, sec. 591.)

In our opinion where the carrier has the right to eject the passenger for non-payment of fare, he must use a reasonable degree of care in the exercise of this right both as to the manner and place of the ejectment. While he is not required to put the passenger off at a station or stopping place, he certainly has no right to put him off at a place where his life or his health would be endangered. He certainly would have no right to stop the train upon a bride or trestle dangerous for pedestrians to walk upon and put the passenger off on such bridge or trestle. He certainly would not have the right to put the passenger off in a swamp overflowed with water and infested with dangerous animals and reptiles, nor do we think he would have the right at the late hour of midnight, in cold weather at a distance from any certain help, to eject a crippled man, who was thinly clad and who when he took passage upon the train believed he had a valid ticket entitling him to passage over the road.

We think the jury, upon such a state of facts as is presented in this case might well conclude that appellant's conductor in ejecting appellee did not use reasonable or ordinary care in selecting the place of ejectment, but that on the contrary he acted negligently and tortiously.

This was a question of fact for the jury to determine, and we think their finding is supported by the evidence and is in accord-

ance with the law governing such cases. (W. & W. Con. Rep., sec. 255.)

It is contended by appellant, however, that appellee was notified before reaching Eastland station that he must get off at that station, and that having failed to do so, he cannot complain that he was ejected at an improper place. We cannot perceive that the notice given appellee in any way effects his right to recover this action. It does not appear that he was notified or had any knowledge of the fact that Eastland had been reached. It was the conductor's right and duty to eject him at that station, and he should have done so, and his not doing so is of itself an evidence that he was negligent. Appellee was no more a trespasser after the train passed Eastland than he was before, and he certainly did not forfeit his life or health, or his right to human treatment by failing to obey the order of the conductor to get off at that point. If it had been proved that he knew when the train reached Eastland and had an opportunity to. there leave it, and that he had made no effort to do so, while such conduct on his part would be reprehensible, and ought to have its influences in estimating damages, still it could not be held to justify his ejection from the train at a place and under circumstances dangerous to his safety.

We find no error in the judgment and it is affirmed. Willson, J.